# UNITED STATES DISTRICT COURT
for the
**EASTERN DISTRICT OF WISCONSIN**

In the Matter of the Seizure of
<small>(Address or brief description of property or premises to be seized)</small>

| | |
|---|---|
| UP TO $33,005.13 ON DEPOSIT IN NORTH SHORE BANK ACCOUNT ENDING IN 5933, HELD IN THE NAME OF RAQUEL MCCARTHY | Case Number: 22-1834M(NJ) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

**TO:** **CHRISTOPHER J. BURKE, a Special Agent with the Federal Bureau of Investigation, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America. The property is described as follows:

Up to $33,005.13 on deposit in North Shore Bank account ending in 5933, held in the name of Raquel McCarthy

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

**YOU ARE HEREBY COMMANDED** to search on or before <u>12/1/2022</u>, 2022
<small>(not to exceed 14 days)</small>

❑ xxx in the daytime – 6:00 a.m. to 10:00 p.m. ❑ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge Nancy Joseph.

❑ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)* ❑ for _____ days. *(not to exceed 30)*
❑ until, the facts justifying, the later specific date of _____

Date and time issued <u>11/17</u>, 2022; ❑ 9:53 a.m.    *[signature: Nancy Joseph]*
<i>Judge's signature</i>

City and state: <u>Milwaukee, Wisconsin</u>    THE HONORABLE NANCY JOSEPH
United States Magistrate Judge
<i>Name & Title of Judicial Officer</i>

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of: |
|---|
| |

| Inventory of the property taken: |
|---|
| |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>_____<br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $33,005.13 ON DEPOSIT IN NORTH SHORE BANK ACCOUNT ENDING IN 5933, HELD IN THE NAME OF RAQUEL MCCARTHY

Case Number:
22-1834M(NJ)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Christopher J. Burke, being duly sworn depose and say:

I am a Special Agent with the Federal Bureau of Investigation and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, up to $33,005.13 on deposit in North Shore Bank account ending in 5933, held in the name of Raquel McCarthy, that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that consists of, or is traceable to, proceeds of wire fraud committed in violation of 18 U.S.C. § 1343, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

❑ Delayed notice of ____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

_____
Signature of Affiant
Christopher J. Burke, FBI

Date and time issued 11/17/2022 @ 9:55 a.m.

at Milwaukee, Wisconsin
City and State

Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Christopher J. Burke, being first duly sworn, hereby depose and state as follows:

## Affiant's Background

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since December 2009. I am currently assigned to an FBI squad in Milwaukee, Wisconsin, which investigates wire fraud, embezzlement, and other white collar criminal matters. My duties as a Special Agent include investigating violations of federal law, including various white-collar crimes such as wire fraud, bank fraud, embezzlement, money laundering, securities fraud, insider trading, and mortgage fraud. I have received numerous trainings in the investigation of white-collar crimes, and during my tenure with the FBI I have investigated multiple embezzlement and wire fraud investigations. During my time at the FBI, I have been involved in investigations that have resulted in seizures of criminally derived property, including monetary instruments.

2. As an FBI Special Agent, I have conducted investigations into wire fraud, money laundering, and other complex financial crimes. In the course of those investigations, I have used various investigative techniques, including undercover operations, reviewing physical and electronic evidence, and obtaining and reviewing financial records. In the course of these investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, and ownership of proceeds of crime and to avoid detection by law enforcement of their underlying acts.

3. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included in this affidavit every detail I

know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrant.

4. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, my review of other police reports, information provided from law enforcement officers, and information I have obtained in the course of this investigation from the victims of these offenses, all of whom and which I believe to be reliable.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## Property Sought to be Seized

6. I submit this affidavit in support of an application for a warrant to seize up to $33,005.13 from North Shore Bank account number 3000845933 ("North Shore Bank 5933"), that is held in the name of Raquel McCarthy.

7. For the reasons set forth below, I submit that up to $33,005.13 in funds that are deposited in North Shore Bank 5933 are:

    a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343;

    b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

    c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

    d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

**Background**

8. Company A is a small private company that was founded in 1978, and is located in Fox Point, Wisconsin. Company A is owned and operated by Victim 1 and Victim 2. Company A is a business-to-business communications company that provides major corporations and non-profit organizations with live event and video production, global webcasting, animation, and interactive multimedia services.

9. In December 2020, Raquel McCarthy, who resides in Saukville, Wisconsin, was hired to be the business manager and bookkeeper for Company A. McCarthy's responsibilities included all: accounting, bookkeeping, ordering of office supplies, paying of bills, handling of production coordination, managing of the office. She also answered telephone calls to the office and handled duplication ordering for Company A's largest client, John Deere. McCarthy was employed at Company A from December 2020, until September 1, 2022, which was the date that McCarthy's employment with Company A was terminated.

10. In light of her professional responsibilities, McCarthy was able to issue checks and deposit checks from Company A's bank account. McCarthy had full and complete authority to use Company A bank accounts to execute banking transactions for the day-to-day business of Company A. McCarthy also had positive pay authority, which allowed McCarthy to approve checks that she had written and made out to cash. McCarthy had access to Company A's physical checkbook.

11. Company A has three business bank accounts, which are all held at North Shore Bank, in Brookfield, Wisconsin. One of these bank accounts is a checking account. The other two accounts are business money market accounts. The money market accounts are used primarily as savings accounts. The North Shore Bank checking account, which has an

account number of 03903303 ("North Shore Bank 3303"), is the account from which Company A issues checks.

12. On Sunday, August 28, 2022, Victim 2 logged into the Company A North Shore Bank 3303 account to see if a large deposit from a client had been received. When Victim 2 looked at the banking transactions in North Shore Bank 3303, Victim 2 noticed three checks, each in the amount of $5,100.00. These three checks looked suspicious to Victim 2 because they had all been made payable to cash in August 2022. Company A very rarely made checks payable to cash. When Company A did issue a check that was made payable to cash, it was for very small dollar amounts that were under $1,000.00. The purpose of these checks would typically be, for example, to add money to Company A's petty cash or to buy fast food for lunch for a production crew that was working at Company A.

13. On Sunday, August, 28, 2022, after discovering that three checks had been made out to cash in August 2022, Victim 2 contacted Lyneen Fischer, who is the Vice President of Security and the Payments Manager at North Shore Bank, in Brookfield, Wisconsin. Fischer looked at the North Shore 3303 account and informed Victim 2 that this was a much larger problem than just the three checks that Victim 2 had discovered. According to Fischer, in addition to the three checks that had been made out to cash for $5,100.00 in August 2022, there were additional checks that had been made out to cash dating back to August 2021.

14. Fischer was able to review the cancelled checks from North Shore Bank 3303 and saw that almost all of the checks that had been made out to cash had been deposited into a U.S. Bank account, account number 182376110231 ("U.S. Bank 0231"). Fischer identified U.S. Bank 0231 as a checking account that belonged to Raquel McCarthy. Fischer also informed

4

Victim 2 that almost all of the checks from North Shore Bank 3033 had been deposited into U.S. Bank 0231 by using an automated teller machine (ATM). Fischer explained that when a check is deposited through an ATM, the back of the check has information printed onto it. This information includes: the date, time, and location of when the check was deposited and the bank account number that the check was deposited into. This information allowed Fischer to see that the majority of the checks that had been made payable to cash from North Shore Bank 3303, had been deposited into McCarthy's U.S. Bank 0231.

15. After speaking to Fischer, Victim 2 performed an analysis of the Company A North Shore Bank 3033 account and discovered that from August 2021, through August 2022, McCarthy issued 35 different checks that were all made out to cash. Almost all of the checks had been deposited into U.S. Bank 0231. McCarthy deposited one check made payable to cash, in the amount of $6,105.00, into McCarthy's North Shore Bank 5933 account. The following table is a list of checks that McCarthy made payable to cash and deposited into her personal bank accounts:

| Check #: | Date: | Amount: | Memo: |
|---|---|---|---|
| 46630 | 8/12/2021 | $600.00 | Harley Davidson |
| 46668 | 8/24/2021 | $1,200.00 | |
| 46848 | 12/30/2021 | $6,105.00 | |
| 46850 | 12/29/2021 | $3,621.88 | |
| 46854 | 1/6/2022 | $600.00 | Harley Davidson |
| 46904 | 2/9/2022 | $270.72 | |
| 46910 | 2/15/2022 | $5,100.00 | |
| 46916 | 2/21/2022 | $625.52 | Supplies (Baird) |
| 46921 | 2/24/2022 | $210.06 | |
| 46922 | 2/24/2022 | $352.68 | |
| 46931 | 3/1/2022 | $5,100.00 | |
| 46939 | 2/24/2022 | $653.52 | |
| 46940 | 3/14/2022 | $3,600.00 | Petty Cash |
| 46952 | 3/17/2022 | $5,810.00 | |
| 46961 | 3/23/2022 | $3,600.00 | |

| 46969 | 3/28/2022 | $10,200.00 | Harley/Baird |
| 46978 | 4/5/2022 | $8,700.00 | Baird/Harley |
| 46991 | 4/14/2022 | $5,100.00 | Coffee Break-Baird |
| 46997 | 4/2/2022 | $5,100.00 | Shows |
| 47006 | 4/28/2022 | $5,165.00 | Webcasts |
| 47016 | 5/3/2022 | $10,200.00 | |
| 47021 | 5/10/2022 | $8,700.00 | Harley Shoot |
| 47023 | 5/17/2022 | $10,200.00 | Shows |
| 47029 | 5/25/2022 | $10,200.00 | Shows |
| 47033 | 6/17/2022 | $10,200.00 | Harley |
| 47051 | 6/14/2022 | $10,200.00 | Production |
| 47059 | 6/21/2022 | $8,700.00 | Webcasts |
| 47066 | 7/6/2022 | $10,200.00 | |
| 47078 | 7/13/2022 | $5,100.00 | |
| 47084 | 7/18/2022 | $10,200.00 | |
| 47095 | 7/28/2022 | $10,200.00 | |
| 47096 | 8/3/2022 | $5,100.00 | |
| 47102 | 8/9/2022 | $7,200.00 | Shows |
| 47108 | 8/15/2022 | $5,100.00 | Harley |
| 47117 | 8/22/2022 | $5,100.00 | |

16. The total amount of the 35 checks that McCarthy made out to cash and deposited into her personal bank accounts was $198,314.38. Victim 2 said that McCarthy issued all 35 of these checks without any authorization from Victim 2 or Victim 1. Despite the memo notes that appear on many of the checks, these checks were not written or issued for the purpose of executing day-to-day business transactions for Company A.

17. Company A had an unusually large amount of cash on hand at the time McCarthy was writing checks to herself, because Victim 1 and Victim 2 were in the process of selling their company. Victim 1 and Victim 2 are planning to retire, so in the past year and a half, Company A has been selling off parts of their business and their equipment. Victim 2 described Company A as being "flush with cash." Victim 2 estimated that there had been approximately $1 million in cash in the business account. As the bookkeeper, McCarthy could see that there was a lot of cash on hand in the Company A business accounts. Due to

6

the large amounts of cash in the business account, it made it very difficult to detect McCarthy's fraud, as described below.

18. Both Victim 1 and Victim 2 stated that they completely trusted McCarthy. They did not believe that McCarthy would ever steal from them. Victim 2 stated that when McCarthy was initially hired, they conducted background checks on McCarthy and there were no issues. Additionally, all of McCarthy's past employers described McCarthy as being a trustworthy employee. For these reasons, Victim 1 and Victim 2 gave McCarthy the authority to write checks and also gave McCarthy positive pay authority.

## Summary of Scheme to Defraud

19. Evidence gathered so far during the investigation shows that Raquel McCarthy, who resides in Saukville, Wisconsin, defrauded her employer Company A of approximately $198,314.38. The following are some of the steps and actions that McCarthy took to perpetrate her scheme to defraud Victim 1 and Victim 2.

20. McCarthy wrote Company A checks to cash, misrepresented those payments as payments to vendors in Company A's business ledger, and then deposited the funds in her own account. For example, she often disguised stolen checks by making them look like they were payments to one of Logan production Inc.'s main vendors, Vendor 1, which is located in McHenry, Illinois. Company A wrote several checks per month to Vendor 1, as part of their regular course of business. The checks that Company A issued to Vendor 1 were for large dollar amounts, and the dollar amounts ranged from $5,000.00 to over $10,000.00. When McCarthy wrote Company A checks payable to cash and deposited them in her personal bank account, McCarthy was able to disguise these cash payments by creating

7

fake invoices for Vendor 1. McCarthy then recording the checks as invoice payments to Vendor 1 on Company A's accounting records.

21. Another step that McCarthy took to conceal the theft was that McCarthy almost always deposited the checks into her accounts via an ATM machine. By depositing the checks into an ATM machine, McCarthy did not have to answer any questions that a bank teller might ask as to why McCarthy often deposited large check amounts from her employer, that were made payable to cash. There was also a risk that a bank teller could flag these checks as suspicious. Banking activity or that a bank teller might look closely at the checks reach out to Victim 2 or Victim 1 with questions. By using an ATM, McCarthy avoided raising any red flags with the bank tellers, and McCarthy was able to avoid suspicion by the bank.

22. Another misrepresentation that McCarthy used to defraud Company A and Victims 1 and 2, was to put false reasons in the memo lines of the checks. On 17 of the 35 checks that McCarthy wrote out to cash, McCarthy wrote false reasons in the memo line of the checks, including: supplies, webcasts, shows, and coffee. McCarthy also sometimes wrote Harley Davidson or Baird into the memo lines of some of the checks. Harley Davidson and Baird were two of Company As' largest clients. McCarthy wrote false reasons in the memo lines of the checks to make it look as if the checks had been issued to pay for company expenses. McCarthy did this so that if Victim 2 or Victim 1 saw one of these checks, they might not question them due to what was written in the memo line. The misrepresentation in the memo line would make Victim 1 or Victim 2 believe that the check was used for a business expense, when the check had actually been deposited into McCarthy's personal bank account for her personal use.

23. On Sunday, August 28, 2022, when Victim 2 initially confronted McCarthy about the three stolen checks from August 2022, that were each in the amount of $5,100.00, McCarthy attempted to conceal her fraud scheme by telling Victim 2 that it was all just a mix-up. McCarthy told Victim 2 that the Logan Production Inc. accounting software QuickBooks was a mess, and as a result, the checks had accidentally been deposited into McCarthy's bank account. McCarthy told Victim 2 that this was just an accounting error and that McCarthy was already aware of this issue. McCarthy informed Victim 2 that she had already taken steps to correct the issue. On August 29, 2022, McCarthy gave Victim 2 a check made payable to Company A in the amount of $15,300.00. The amount of $15,300.00 was the total amount of the three checks that Victim 2 had discovered had been made payable to cash, from the Company A North Shore Bank 3033 account. The check was from McCarthy's U.S. Bank 0231 account and the check number was 2164. In the memo line of the check McCarthy wrote "error in books." McCarthy also backdated the check and the date of the check was August 24, 2022. McCarthy backdated the check with the specific purpose of making it look like McCarthy had been aware of the issue before Victim 2 had discovered it and had confronted McCarthy about it. McCarthy wanted Victim 2 to believe that this issue had already identified and that McCarthy had already taken steps to correct the accounting error. Due to the fact that Victim 2 had only inquired about the three checks in August 2022, McCarthy took these steps to try and make Victim 2 believe that this was a one-time accounting error. McCarthy told Victim 2 that everything had been fixed and told Victim 2 not to worry about it. McCarthy tried to get Victim 2 to believe this lie so that Victim 2 would not look any further and she would not discover that McCarthy had been embezzling money for a year.

**Facts Supporting Findings of Probable Cause for Issuance of Seizure Warrant**

24. McCarthy's bank records show that there were three separate money transfers that totaled $36,205.00 that can be traced from Company A's North Shore Bank 3303 account to McCarthy's North Shore Bank 5933 account. For all three of these money transfers, McCarthy transferred stolen funds into her personal bank account. As of September 25, 2022, McCarthy's North Shore Bank 5933 account had an account balance of $33,005.13.

25. The first money transfer to McCarthy's North Shore Bank 5933 account occurred on December 30, 2021, when McCarthy wrote a Company A check out to cash in the amount of $6,105.00, from North Shore Bank 3033. The check number was 46848. McCarthy deposited the check directly into her North Shore Bank 5933 account.

26. The second money transfer to McCarthy's North Shore Bank 5933 account occurred on May 26, 2022. On May 25, 2022, McCarthy wrote a Company A check out to cash in the amount of $10,200.00, from North Shore Bank 3033. The check number was 47029. On May 25, 2022, McCarthy deposited this check into her U.S. Bank 0231 account. On May 26, 2022, McCarthy wrote a check made payable to herself, from her U.S. Bank 0231 account, in the amount of $10,000.00. The check number is 2100 and McCarthy wrote "transfer" in the memo line of the check. The $10,000.00 check transferred the funds from McCarthy's U.S. Bank 0231 account to her North Shore Bank 5933 account.

27. The third money transfer to McCarthy's North Shore Bank 5933 account occurred on August 16, 2022. Between July 28, 2020, and August 16, 2022, McCarthy wrote the following checks out to cash, from Company A's North Shore Bank 3033 checking account and deposited them all into her U.S. Bank 0231 account.

| 47095 | 7/28/2022 | $10,200.00 | |
| 47096 | 8/3/2022 | $5,100.00 | |
| 47102 | 8/9/2022 | $7,200.00 | Shows |
| 47108 | 8/15/2022 | $5,100.00 | Harley |

These four checks totaled $27,600.00. On August 15, 2022, McCarthy wrote a check made payable to herself, from her U.S. Bank 0231 account, in the amount of $20,000.00. The check number is 2154 and McCarthy wrote "transfer" in the memo line of the check. The $20,000.00 check transferred the funds from McCarthy's U.S. Bank 0231 account to her North Shore Bank 5933 account.

28. These money transfers totaling $36,205.00, track the stolen money from North Shore Bank 3033, which is the Company A account, to McCarthy's North Shore Bank 5933 account. The $36,205.00 are all funds that McCarthy stole from Company A As of September 25, 2022, the balance of the North Shore Bank 5933 account was $33,005.13.

29. The FBI is investigating allegations that McCarthy committed wire fraud, in violation of Title 18 U.S.C § 1343, in the Eastern District of Wisconsin. Wire fraud involves a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits, or causes to be transmitted by means of wire communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme.

30. In this case, McCarthy committed wire fraud by devising a scheme to defraud Company A and Victims 1 and 2, making material misrepresentations to them, and then depositing stolen Company A checking account funds into her U.S. Bank account. The checks that McCarthy deposited into her U.S. Bank account via an ATM were transmitted interstate

by a wire. U.S. Bank, which is based in St. Paul, Minnesota, has servers that are located outside of the State of Wisconsin. When someone deposits a check in Wisconsin, the check must be cleared and the transaction is wired through U.S. Bank's servers that are located outside of the State of Wisconsin.

### Interview with McCarthy

31. On September 1, 2022, McCarthy was e-mailed a termination letter. The termination letter stated that McCarthy was no longer employed at Company A, that she could not go onto the company's premises, she should not access any of the company's computer systems, and that she should preserve all documents and electronic records. Additionally, in the letter it stated that they were aware that McCarthy embezzled money from Company A and they informed McCarthy that law enforcement had been notified. On September 1, 2022, McCarthy replied to the e-mail by asking: "Can this matter be settled?" McCarthy never disputed the statement that she had embezzled money from Company A.

32. On September 15, 2022, at approximately 11:25 AM CST, Victim 1 and Victim 2 telephoned McCarthy's cellular telephone number (414) 388-7430. The telephone call lasted approximately 15 minutes and it ended at approximately 11:40 AM CST. This telephone call was a consensually recorded telephone call that was recorded using a FBI recorded device. FBI Special Agents Christopher J. Burke and Lindsay Schloemer were present during the consensual recorded telephone call. McCarthy was not aware that the FBI was recording this telephone conversation.

33. During the recorded telephone call Victim 2 questioned McCarthy about the money that McCarthy stole from Company A  McCarthy admitted to Victim 2 that she stole the money

12

from Company A McCarthy said that she was sorry. McCarthy said that she planned on paying Victim 1 and Victim 2 back.

34. During the telephone call, Victim 2 asked McCarthy how McCarthy was able to take large amounts of cash out of Company A and have it go unnoticed for so long. McCarthy explained to Victim 2 that she concealed the theft, by creating fake invoices to Vendor 1. McCarthy specifically made the Logan Production Inc.'s accounting books look as if the 35 checks had been payments that had been made to Vendor 1, when in fact McCarthy deposited the checks into her personal bank account.

35. The bank records that were provided by U.S. Bank and North Shore Bank clearly show that all 35 of the stolen checks were deposited into McCarthy's personal bank accounts and that the money was used for her personal benefit. Both Victim 1 and Victim 2 stated that McCarthy did not have permission to write any of these checks and did it without the knowledge of Victim 1 and Victim 2.

### **Applicable Money Laundering and Asset Forfeiture Provisions**

36. Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

37. Section 984 (a) provides in part:

> (1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution
>
> > (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

13

> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

38. 18 U.S.C. § 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

39. Thus, under Section 984, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

40. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to be seized for forfeiture.

## Conclusion

41. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that up to $33,005.13 in funds that are deposited in the North Shore Bank 5933 account, that is held in the name of Raquel McCarthy, are:

a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses, committed in violation of 18 U.S.C. § 1343;

b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

# # #